UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; and HDI GLOBAL SPECIALTY SE f/k/a INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE, | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** |

Plaintiffs,

Civil No.: ____CV_____

vs.

**JURY TRIAL DEMANDED**

MR. DEMOLITION INC.; 1241 42 DEVELOPMENT LLC;
1855 EP HOLDINGS LLC; JORGE VELEZ, as
Administrator of the Estate of JOSE LANDACAY,
JORGE VELEZ , as Guardian of K.L, a Minor;
JESSICA LANDACAY; FILIPPIO SARUBBI;
ANNA VELIA SARUBBI; CLARENCE COBO;
TOMAS V. ZAPETA;  WESCO INSURANCE COMPANY,
as Subrogee of R&C Management Co. and 297 Lenox Realty
LLC; GABOR NEMETH; MICHAEL BARRETTO;
TAIESHA RIVERA; CONSUELO RAMIREZ;
ALEXANDER RODRIGUEZ; NOLVIA PACHECO; and
SILVERCUP SCAFFOLDING 1 LLC,

Defendants.
_____

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

("Underwriters"), and HDI GLOBAL SPECIALTY SE f/k/a INTERNATIONAL INSURANCE

COMPANY OF HANNOVER SE ("HDI") (Collectively, "Plaintiffs"), by and through their

attorneys, Hurwitz & Fine, P.C., as and for its Complaint against the Defendants, allege, upon

information and belief:

# NATURE OF ACTION

1.      This is an action for rescission of insurance policies issued by Underwriters to Mr. Demolition, Inc. and for declaratory relief under 28 U.S.C. § 2201.

2.      Plaintiffs seek to void, *ab initio*, a series of liability and excess policies they issued to Mr. Demolition Inc. due to material misrepresentations in its insurance application. Mr. Demolition represented on its insurance application that it was a general contractor. However, Mr. Demolition did not direct or control work at the various job sites. In realty, Mr. Demolition was re-selling the insurance he bought from Plaintiffs in exchange for a fee. Thus, Mr. Demolition's representations were not accurate. Mr. Demolition also misrepresented its liability controls. The misrepresentations Mr. Demolition made during the application process were material and warrant rescission of the policies.

3.      Alternatively, Plaintiffs seek declaratory judgment that Plaintiffs have no obligation to defend or indemnify Mr. Demolition in a litany of underlying actions due to its failure to cooperate.

4.      Alternatively, and to the extent this Court does not rescind the policies, Plaintiffs seek declaratory judgment that Plaintiffs have no obligation to defend or indemnify 1241 42 Development LLC and 1855 EP Holdings LLC because they are not additional insureds for the claimed losses under the policies.

5.      The purported additional insureds and known claimants are joined to this action so that complete declaratory relief may be afforded to all parties impacted.

## THE PARTIES

6.      Plaintiff, Underwriters, are comprised of the following underwriting syndicates: Ark Corporate Member Limited, RenaissanceRe Corporate Capital Limited, Chaucer Corporate Capital Limited, and MS Amlin Underwriting Limited.

7.      Ark Corporate Member Limited's citizenship is in the United Kingdom because it is incorporated in the United Kingdom, specifically in England and Wales.

8.      Ark Corporate Member Limited is a limited company incorporated under the laws of the United Kingdom and having its principle place of business at 30 Fenchurch Avenue, London, England EC3M5AD

9.      RenaissanceRe Corporate Capital Limited's citizenship is in the United Kingdom because it is incorporated in the United Kingdom, specifically England.

10.      RenaissanceRe Corporate Capital Limited is a limited company incorporated under the laws of the United Kingdom and having its principle place of business at 125 Old Broad Street, 18th Floor, London, England EC2N1AR.

11.      Chaucer Corporate Capital Limited's citizenship is in the United Kingdom because it is incorporated in the United Kingdom, specifically England.

12.      Chaucer Corporate Capital Limited is a limited company incorporated under the laws of the United Kingdom, and having its principle place of business at Plantation Place, 30 Fenchurch Street, London, EC3M3AD.

13.      MS Amlin Underwriting Limited's citizenship is in the United Kingdom because it is incorporated in the United Kingdom, specifically England.

14.      MS Amlin Underwriting Limited is a limited company incorporated under the laws of the United Kingdom, and having its principle place of business at 122 Leadenhall St,

London, EC3V4AG.

15. The Underwriters are those individuals subscribing to policies PGIARK05540-00, PGIXS00329-00, PGIARK05540-01, PGIXS00329-01, PGIARK05540-02, PGIXS00329-02, PGIARK05540-03, and PGIXS00329-03 issued to Mr. Demolition.

16. Plaintiff, HDI, was and still is a foreign public company registered in accordance with the corporate law of the European Union with its principal place of business in Hanover, Germany.

17. In addition to the Underwriters, HDI also underwrote policies PGIARK05540-02, PGIXS00329-02, PGIARK05540-03, and PGIXS00329-03 issued to Mr. Demolition

18. At all relevant time, MR. DEMOLITION INC. was and still is a domestic Business Corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in Brooklyn, New York.

19. At all relevant time, 1241 42 DEVELOPMENT LLC ("1241") was and still is a domestic Limited Liability Company duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in Brooklyn, New York.

20. At all relevant time, 1855 EP HOLDINGS LLC ("1855") was and still is a domestic Limited Liability Company duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in  Brooklyn, New York.

21. Upon information and belief, Jose Landacay is deceased and resided in the County of Westchester, State of New York at the time of his death.

22. Upon information and belief, an Estate has been set up for Jose Landacay and JORGE VELEZ is the Administrator.

23. At all relevant time, JORGE VELEZ, was and still is an adult resident of the

County of Westchester, State of New York.

24.    Upon information and belief, JORGE VELEZ was appointed as legal guardian of Jose Landacay' s infant child, K.L.

25.    At all relevant time, JESSICA LANDACAY, was and still is an adult resident of the County of Westchester, State of New York.

26.    At all relevant time, FILIPPIO SARUBBI, was and still is an adult resident of the County of Kings, State of New York.

27.    At all relevant time, ANNA VELIA SARUBBI, was and still is an adult resident of the County of Kings, State of New York.

28.    At all relevant time, CLARENCE COBO, was and still is an adult resident of the County of Bronx, State of New York.

29.    At all relevant time, TOMAS V. ZAPETA, was and still is an adult resident of the County of Kings, State of New York.

30.    At all relevant time, WESCO INSURANCE COMPANY ("Wesco") is an insurance company organized and existing under the laws of the State of Delaware and authorized to transact business and issue insurance in New York State, with its principal place of business at 59 Maiden Lane, 6th Floor, New York, New York 10038.

31.    Upon information and belief, Wesco paid out insurance benefits under a policy of insurance it issued to R&C Management Co. and 297 Lenox Realty LLC and has a right of subrogation to the extent of that payment.

32.    At all relevant time, GABOR NEMETH, was and still is an adult resident of the County of Kings, State of New York.

33.    At all relevant time, MICHAEL BARRETTO, was and still is an adult resident of

the County of Hudson, State of New Jersey.

34.     At all relevant time, TAIESHA RIVERA, was and still is an adult resident of the County of Bronx, State of New York.

35.     At all relevant time, CONSUELO RAMIREZ, was and still is an adult resident of the County of Kings, State of New York.

36.     At all relevant time, ALEXANDER RODRIGUEZ, was and still is an adult resident of the County of Rockland, State of New York.

37.     At all relevant time, NOLVIA PACHECO, was and still is an adult resident of the County of Westchester, State of New York.

38.     At all relevant time, SILVERCUP SCAFFOLDING 1 LLC ("SILVERCUP") was and still is a domestic Limited Liability Company duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in  Brooklyn, New York.

39.     1241; 1855; JORGE VELEZ, JESSICA LANDACAY; FILIPPIO SARUBBI; ANNA VELIA SARUBBI; CLARENCE COBO; TOMAS V. ZAPETA; WESCO; GABOR NEMETH; MICHAEL BARRETTO; TAIESHA RIVERA; CONSUELO RAMIREZ; ALEXANDER RODRIGUEZ; NOLVIA PACHECO;   and SILVERCUP are named as Defendants in this action for complete relief to be afforded to all who may be impacted by the outcome of this declaratory judgment action.

HURWITZ & FINE, P.C.
1300 LIBERTY BUILDING
BUFFALO, NEW YORK 14202

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over this matter under 28 USC §1332 in that it arises between citizens of different states / countries and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, insofar as the value of the right being protected and/or the injury being averred exceeds $75,000.

41.     Venue is proper in this district under 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

42.     The subject insurance policies were delivered in Brooklyn, New York.

43.     The underlying claims and underlying actions arise out of premises and construction sites primarily located in Brooklyn, New York.

## MR. DEMOLITION'S INSURANCE APPLICATION

44.     On or about July 28, 2015, Mr. Demolition Inc., through its president, Joel Perlstein, applied for insurance with Underwriters.

45.     Mr. Demolition represented on its application that it was a "construction/project manager".

46.     On the insurance application, Mr. Demolition was asked "Does [Mr. Demolition] use a written contract with customers?".

47.     Mr. Demolition responded "Yes".

48.     On the insurance application, Mr. Demolition was also asked "Does [Mr. Demolition] use a written contract with subcontractors?".

49.     Mr. Demolition responded "Yes".

50.     Mr. Demolition was further asked "Does [Mr. Demolition's] contracts contain

hold harmless agreement in applicant's favor?".

51.     Mr. Demolition responded "Yes".

52.     Mr. Demolition was then asked "Does [Mr. Demolition] obtain certificates of insurance from all subcontractors?".

53.     Mr. Demolition responded "Yes".

54.     Mr. Demolition was asked "Is [Mr. Demolition] added as an additional insured on the subcontractors' liability policies?".

55.     Mr. Demolition responded "Yes".

56.     At "NOTICE TO NEW YORK APPLICANTS", the application cautioned against making a misrepresentation or concealing any fact.

57.     Below that cautionary provision, Mr. Perlstein, signed the insurance application as President of the corporation.

## THE INSURANCE POLICIES

58.     In reliance on Mr. Demolition's representations, Underwriters issued an insurance policy to Mr. Demolition, policy number PGIARK05540-00, for the policy period October 31, 2015 to October 31, 2016 containing a Commercial General Liability coverage with a $1 million for occurrence limit and $2 million general aggregate limit.

59.     In reliance on Mr. Demolition's representations, Underwriters also issued a follow form excess policy to Mr. Demolition, Inc., policy number PGIXS00329-00, with the same effective dates.

60.     1855 and 1241 claim to be additional insureds under those policies.

61.     In reliance upon Mr. Demolition's representations on his initial application for insurance, Underwriters renewed Mr. Demolition's insurance coverage.

62.     Underwriters issued an insurance policy to Mr. Demolition, policy number PGIARK05540-01, for the policy period October 31, 2016 to October 31, 2017 containing a Commercial General Liability coverage with a $1 million for occurrence limit and $2 million general aggregate limit.

63.     Underwriters issued a follow form excess policy to Mr. Demolition, Inc., policy number PGIXS00329-01, with the same effective dates.

64.     Underwriters and HDI issued an insurance policy to Mr. Demolition, policy number PGIARK05540-02, for the policy period October 31, 2017 to October 31, 2018 containing a Commercial General Liability coverage with a $1 million for occurrence limit and $2 million general aggregate limit.

65.     Underwriters and HDI issued a follow form excess policy to Mr. Demolition, Inc., policy number PGIXS00329-02, with the same effective dates.

66.     Underwriters and HDI issued an insurance policy to Mr. Demolition, policy number PGIARK05540-03, for the policy period October 31, 2018 to October 31, 2019 containing a Commercial General Liability coverage with a $1 million for occurrence limit and $2 million general aggregate limit.

67.     Underwriters and HDI issued a follow form excess policy to Mr. Demolition, Inc., policy number PGIXS00329-03, with the same effective dates.

68.     The policies numbered PGIARK05540-00, PGIXS00329-00, PGIARK05540-01, PGIXS00329-01, PGIARK05540-02, PGIXS00329-02, PGIARK05540-03, and PGIXS00329-03 are, hereinafter, referred to collectively as the "policies".

69.     The Policies contain the following relevant provision:

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person (s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an Additional insured.  However, this status exists only for the project specified in that contract. | |
| Information required to complete this Schedule, if not shown above will be shown in the Declarations. | |

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    1.  Your acts or omission; or

    2.  The acts or omissions of those acting on your behalf;

    in the performance of your ongoing operations for the additional insured(s) at the location (s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

    This insurance does not apply to "bodily injury" or "property damage" occurring after:

    1.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service,

maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

\*\*\*

70. The policies Underwriters and HDI issued to Mr. Demolition required it to cooperate with the investigation and defense against all claims and lawsuits for which insurance coverage is sought.

71. The policies contain the following relevant duties and conditions:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
  **1)** How, when and where the "occurrence" or offense took place;
  **2)** The names and addresses of any injured persons or witnesses; and
  **3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
  **b.** If a claim is made or "suit" is brought against any insured, you must:
  **1)** Immediately record the specifics of the claim or "suit" and the date received; and
  **2)** Notify us as soon as practicable.
  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
  **c.** You and any other involved insured must:
  **1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **2)** Authorize us to obtain records and other information;

    **3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

72.    The policies contain the following Contractual Liability exclusion:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

***

73.     Policies PGIARK05540-03 and PGIXS00329-03 contain an **EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS** (PGI EL 054 0915), which provides:

**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY PART CONTRACTORS' POLLUTION LIABILITY COVERAGE PART**

**Exclusion e. Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I – Coverages) is replaced by the following:**

**e. Employer's Liability**

"Bodily Injury" to:
(1) An employee of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or

(2) A "contractor" or any "employee" of any "contractor" arising out of or in the course of the rendering or performing of services of any kind or nature whatsoever by such "contractor" or any "employee" of such "contractor" for which any insured may become liable in any capacity; or

(3) The spouse, child, parent, brother or sister of any "employee" of any insured or of any "contractor" or any "employee" of such "contractor" as a consequence of (1) or (2) above.

This exclusion applies whether the insured may be liable as an employer or in other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this

exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "employee" in the DEFINITIONS of the **COMMERCIAL GENERAL LIABILITY PART** and the **CONTRACTORS' POLLUTION LIABILITY COVERAGE PART** is replaced by the following:

5. "Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owners, and any and all persons working for or providing services and or materials of any kind for these persons or entities mentioned herein.

\*\*\*

74.     The Policies also contain the following relevant definitions:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

***

## SECTION V – DEFINITIONS

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b**. A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another
party to pay for "bodily injury" or "property damage"
to a third person or organization. Tort liability
means a liability that would be imposed
by law in the absence of any contract or
agreement.

Paragraph **f.** does not include that part of any contract or agreement:
**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;
**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

\*\*\*

## THE UNDERLYING ACTIONS

75.     After the policies were issued, Underwriters and HDI were notified of various claims and lawsuits brought against Mr. Demolition.

76.     GABOR NEMETH sued Mr. Demolition and 1241 in a lawsuit captioned *Gabor Nemeth v. Prestige Construction NY LLC, 1241 42 Development LLC, Mr. Demolition Inc., and ABC Corp., a fictious name intending to be that of an unknown contractor*, Supreme Court, Kings County, Index No.: 519284/2017 (the "*Nemeth* Action"), alleging a construction worker accident.

77.     1241 commenced a third-party action against Mr. Demolition in a lawsuit captioned *1241 42 Development LLC v. OHR Chodosh Electrical Contracting, Inc. and Mr. Demolition Inc.*, Supreme Court, Kings County, Index No.: 519284/2017, asserting common law contribution and indemnity as well as contractual indemnification.

78.     JORGE VELEZ and JESSICA LANDACAY sued Mr. Demolition and 1855 in a lawsuit captioned *Jorge Velez, as Administrator of the Estate of Jose Landacay, Jorge Velez, as Guardian of K.L, a Minor, and Jessica Landacay v. Mr. Demolition, Inc., 1855 EP Holdings, LLC, Prestige Construction NY, LLC, Zenco Group, Inc., J&C Steel Fabricators, Corp., Powers Bridging & Scaffolding, Inc., Silvercup Scaffolding 1, LLC and Best Build NYC, Inc.*, Supreme

Court, Kings County, Index No.: 515560/2017 (the "*Landacay* Action"), alleging a construction worker accident.

79. In the *Landacay* Action, SILVERCUP has asserted, among other claims, a contractual indemnification claim against 1855.

80. FILIPPO SARUBBI AND ANNA VELIA SARUBBI sued Mr. Demolition in a lawsuit captioned *Filippo Sarubbi and Anna Velia Sarubbi v. Sam Weisner a/k/a Shlome Weiss, 60 Equities LLC, Mr. Demolition Inc., and Countrywide Builders*, Supreme Court, Kings County, Index No.: 506513/2017, alleging property damage due to ongoing construction activities.

81. CLARENCE COBO sued Mr. Demolition in a lawsuit captioned *Clarence Cobo v. Mr. Demolition Inc., Newkirk Partners LLC and SteelFab NY, Inc.*, Supreme Court, Bronx County, Index No.: 26682/2018E, alleging a premises liability incident.

82. TOMAS V. ZAPETA sued Mr. Demolition in a lawsuit captioned *Tomas V. Zapeta v. 5214 Ave Development LLC, Mr. Demolition Inc., and Silvercup Scaffolding 1, LLC*, Supreme Court, Kings County, Index No.: 516962/2017, alleging a construction worker accident.

83. WESCO INSURANCE COMPANY, as subrogee of R&C Management Co. and 297 Lenox Realty LLC sued Mr. Demolition in a lawsuit captioned *Wesco Insurance Company, as subrogee of R&C Management Co. and 297 Lenox Realty LLC v. JRS Realty Enterprises, LLC, Gemstar Contracting Corp., Mr. Demolition Inc., Structural Engineering & Detailing P.C., P.C., and Robert Siqeca, P.C.*, Supreme Court, Kings County, Index No.: 501724/2019, asserting a subrogation action relating to property damage allegedly caused by ongoing construction activities.

84. MICHAEL BARRETTO sued Mr. Demolition in a lawsuit captioned *Michael Barretto v. Newkirk Partners LLC, Mr. Demolition Inc., and Urban Millwork Inc., and Twin*

*Group Associates Inc.*, Supreme Court, Kings County, Index No.: 518653/2019, alleging a construction worker accident.

85. TAIESHA RIVERA sued Mr. Demolition in a lawsuit captioned *Taiesha Rivera v. Shaker Contracting Corp. and Mr. Demolition Inc.*, Supreme Court, Bronx County, Index No.: 27880/2018E, alleging a trip and fall accident.

86. CONSUELO RAMIREZ sued Mr. Demolition in a lawsuit captioned *Consuelo Ramirez v. Mactech Roofing & Restoration Corp., Velocity Framers, Inc., Wide Flange, Inc., Best Building NYC, Inc., KL Cooling & Heating LLC, Mr. Demolition Inc., CELA Concrete Inc., and Green Star Electrical Contracting, Inc.*, Supreme Court, Kings County, Index No.: 501264/2019, alleging a premises liability incident.

87. ALEXANDER RODRIGUEZ sued Mr. Demolition in a lawsuit captioned *Alexander Rodriguez v. 681 Franklin Avenue Holdings, Inc., Prestige Construction NY, LLC, and Mr. Demolition Inc.*, Supreme Court, Kings County, Index No.: 504507/2019, alleging he tripped and fell on construction debris.

88. Underwriters received notice that NOLVIA PACHECO may pursue a claim for injuries allegedly sustained on October 10, 2019 while working at a construction site located at 294 Grand Street, New York, New York.

89. The above referenced claims and lawsuits, hereinafter, are referred to collectively as the "Underlying Incidents and Underlying Lawsuits".

90. In all of the above-referenced lawsuits, Underwriters are currently providing a courtesy defense to Mr. Demolition.

91. In the *Nemeth* Action, Underwriters are currently providing a courtesy defense to 1241.

92.     In the *Landacay* Action, Underwriters are currently providing a courtesy defense to 1855.

## PRIOR CLAIMS

93.     Non-party Mansoor Ali asserted a claim against Mr. Demolition for property damage to his Honda Civic.

94.     Underwriters and HDI, in good faith, paid Mr. Ali $11,447.00 to settle Mr. Ali's claim against Mr. Demolition.

95.     In exchange for Underwriters and HDI's payment, Mansoor Ali executed a release, releasing his claim against Mr. Demolition.

## UNDERWRITERS' DISCOVERY OF THE MISREPRESENTATIONS

96.     During the course of its investigation into the claims and lawsuits, Underwriters discovered that Mr. Demolition's insurance application contained material misrepresentations.

97.     Underwriters uncovered a scheme in which Mr. Demolition would, by contract, assume all liability for injuries at construction sites so as to transfer all liability to his liability insurers in exchange for a hefty sum of money.

98.     Mr. Demolition  would obtain the permits from the New York City Department of Buildings ("DOB").

99.     In applying for the work permits with the DOB, Mr. Demolitions listed it was the General Contractor for the project.

100.     Mr. Demolition contracted with the owner to assume all liability for injuries at the job site.

101.     In fact, the contracts themselves typically contained only an indemnification

provision and an insurance procurement provision.

102.   No actual construction work is specified in the contracts.

103.   No work of any kind is specified in the contracts.

104.   Thereafter, Mr. Demolition, despite being the General Contractor of record with the City, did not supervise the work at the construction sites.

105.   Despite being the General Contractor of record, Mr. Demolition did not ensure the safety of the job site or ensure safe practices at the construction sites.

106.   Upon information and belief, at a number of the construction sites, Mr. Demolition did not even visit the construction site.

107.   Thereafter, various construction workers and pedestrians reported injury at these job sites.

108.   Mr. Perlstein testified at a deposition that, in essence, he was paid a fee to be the General Contractor on paper only.

109.   In exchange for these hefty sums of money, he would transfer all liability for injuries at the construction site from the project owner to Mr. Demolition's liability insurers.

110.   Rather than act as general contractor—as indicated on its insurance application—Mr. Demolition was, in actuality, in the business of selling insurance.

111.   Mr. Demolition is not licensed to sell insurance in New York State.

112.   Accordingly, Mr. Demolition misrepresented his role as a general contractor on his insurance application with Underwriters and HDI.

113.   Following a fatality at one of these job sites, the New York City Department of Buildings investigated and revoked Mr. Demolition's General Contractor License.

114.   To this day, Mr. Demolition does not hold a General Contractor License.

115. Underwriters also discovered that Mr. Demolition misrepresented its liability controls, such as contractual indemnification and insurance procurement.

116. Mr. Demolition's contracts did not contain hold harmless agreements in Mr. Demolition's favor.

117. Mr. Demolition's contracts did not require certificates of insurance from subcontractors.

118. Mr. Demolition's contracts did not require subcontractors to add Mr. Demolition as an additional insured on their policies.

119. Thus, while Mr. Demolition represented on its insurance application that it had appropriate risk and liability controls in place, in actuality, those representations were incorrect.

## **MR. DEMOLITION'S NON-COOPERATION**

120. In its efforts to investigate and defend against the claims in the Underlying Incidents and Underlying Lawsuits, Underwriters and HDI requested Mr. Demolition produce various documents necessary to the defense of these claims and lawsuits.

121. Mr. Demolition failed to provide the requested documents.

122. Underwriters and HDI also requested Mr. Demolition appear for Examination Under Oath on numerous occasions.

123. As part of those Examinations Under Oath, Underwriters and HDI, again, requested Mr. Demolition produce various documents necessary to the defense of the Underlying Incidents and Underlying Lawsuits.

124. Specifically, Underwriters and HDI requested Mr. Demolition produce the contracts, documents evidencing the work being performed, lists of subcontractors, contracts

with the subcontractors, certificates of insurance, and various other documents relevant to the construction projects and defense of Mr. Demolition, his role at the project, and its liability controls and risk transfer.

125.     Mr. Demolition failed to appear for the scheduled Examinations Under Oath.

126.     Mr. Demolition failed to produce the requested documents.

127.     On June 13, 2019, Mr. Demolition, through its employee, Michael Kramer, advised that "with all due respect to the court system", Mr. Demolition would not be participating in Underwriters and HDI's requests.

128.     Upon information and belief, Mr. Demolition has failed to appear, or will fail to appear, for deposition in one or more of the Underlying Actions.

129.     Upon information and belief, Mr. Demolition has failed, or will fail, to participate in discovery in one or more of the Underlying Actions.

130.     Upon information and belief, Mr. Demolition's failure to appear for deposition or produce discoverable information will result in a Court Order striking its Answer(s) and all affirmative defenses and result in a trial on damages only, prejudicing Underwriters and HDI.

## COUNT I
## RESCISSION

131.     Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

132.     The misrepresentations and omissions by Mr. Demolition in its applications were material to Underwriters and HDI's decision to issue the policies.

133.     Had Mr. Demolition truthfully answered the questions in the applications, Underwriters and HDI would not have issued the policies, would have charged a higher premium

for the policies, or would have issued the policies under different terms.

134. Mr. Demolition's false statements on its insurance application constituted material misrepresentation under N.Y. Insurance Law §3105.

135. Accordingly, Underwriters and HDI are entitled to rescind the policies *ab initio* based upon Mr. Demolition's material misrepresentations and are entitled to a declaration that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition or anyone else in connection with the Underlying Incidents and Underlying Lawsuits, any other occurrence, claim, or suit under the policies.

136. Further, Underwriters and HDI seek a declaration that Mr. Demolition must reimburse Underwriters and HDI for all defense costs incurred in the Underlying Incidents and Underlying Actions.

137. Apart from rescission, Underwriters and HDI have no adequate remedy at law to address Mr. Demolition's material misrepresentations and omissions.

<u>**COUNT II**</u>
<u>**REIMBURSEMENT OF ALREADY-PAID CLAIMS / UNJUST ENRICHMENT**</u>

138. Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

139. As set forth above, the policies should be declared void *ab initio* due Mr. Demolition's material misrepresentations and omissions.

140. Prior to Underwriters and HDI uncovering Mr. Demolition's material misrepresentations and omissions, Underwriters and HDI, in good faith, paid $11,447.00 to Mansoor Ali to settle his property damage claim against Mr. Demolition.

141. In exchange for Underwriters and HDI's payment, Mansoor Ali executed a

release, releasing his claim against Mr. Demolition.

142.     In light of the rescission, Underwriters and HDI seek an award of $11,447.00 from Mr. Demolition, plus interest running from the date of payment;

143.     Mr. Demolition has been unjustly enriched at Underwriters and HDI's expense.

144.     It is against equity and good conscience to permit Mr. Demolition to retain such benefits at Underwriters and HDI's expense.

145.     Accordingly, with respect to Mansoor Ali's claim, Underwriters and HDI seek a declaration that Mr. Demolition must reimburse Underwriters and HDI $11,447.00, plus interest running from the date of payment.

## COUNT III
## NON-COOPERATION

146.     Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

147.     As a condition precedent to coverage, the policies require an insured to "Authorize us to obtain records and other information" and "Cooperate     with     us     in     the investigation or settlement of the claim or defense against the 'suit'".

148.     Mr. Demolition has failed to provide Underwriters and HDI with records and other information.

149.     Mr. Demolition has failed to cooperate with his insurers' investigation and defense against  the Underlying Incidents and Underlying Lawsuits.

150.     Mr. Demolition has failed to produce various documents necessary to the defense of the Underlying Incidents and Underlying Lawsuits, despite Underwriters and HDI's attempts to bring about its cooperation.

151.    Mr. Demolition failed to appear for Examinations Under Oath numerous times.

152.    Upon information and belief, in one or more of the underlying actions, Mr. Demolition refuses to cooperate with Underwriters and HDI's courtesy defense by refusing to provide information requested during discovery.

153.    Upon information and belief, Mr. Demolition has failed to appear for depositions in one or more of the underlying actions.

154.    Mr. Demolition's failure to cooperate is a violation of the policy conditions as set forth above and has materially prejudiced Underwriters and HDI's ability to investigate and defend against the liability claims and lawsuits against Mr. Demolition.

155.    Mr. Demolition's conduct, in refusing to respond to Underwriters and HDI's requests, failing to appear for Examinations Under Oath, and by expressly advising it will not cooperate with its insurers, constitutes willful and avowed obstruction.

156.    Accordingly, due to Mr. Demolition's non-cooperation, Underwriters and HDI have no duty or obligation to defend or indemnify Mr. Demolition for the Underlying Incidents and Underlying Lawsuits.

## COUNT IV
## 1241 IS NOT AN ADDITIONAL INSURED

157.    Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

158.    1241 seeks coverage under coverage under policies PGIARK05540-00 and PGIXS00329-00 claiming to be an additional insured.

159.    Those policies provide additional insured coverage only where there is a valid, written contract between the party seeking coverage and the named insured, Mr. Demolition, in

which Mr. Demolition agreed to name that entity as an additional insured.

160.    Upon information and belief, no such agreement exists.

161.    Thus, 1241 is does not qualify as an additional insured under PGIARK05540-00 and PGIXS00329-00.

162.    Accordingly, Underwriters and HDI have no duty or obligation to defend or indemnify 1241 in the *Nemeth* Action.

## COUNT V
## 1855 IS NOT AN ADDITIONAL INSURED

163.    Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

164.    1855 seeks coverage under coverage under policies PGIARK05540-00 and PGIXS00329-00 claiming to be an additional insured.

165.    Those policies provide additional insured coverage only where there is a valid, written contract between the party seeking coverage and the named insured, Mr. Demolition, in which Mr. Demolition agreed to name that entity as an additional insured.

166.    Upon information and belief, no such agreement exists.

167.    Thus, 1855 is does not qualify as an additional insured under PGIARK05540-00 and PGIXS00329-00.

168.    Accordingly, Underwriters and HDI have no duty or obligation to defend or indemnify 1855 in the *Landacay* Action.

## COUNT VI
## 1241 IS NOT AN ADDITIONAL INSURED

169.    Underwriters repeats and incorporates the foregoing paragraphs as though fully

set forth herein.

170.     1241 seeks coverage under coverage under policies PGIARK05540-00 and PGIXS00329-00 claiming to be an additional insured.

171.     As set forth above, 1241 does not qualify as an additional insured under those policies.

172.     Even if 1241 somehow qualified as an additional insured, additional insured coverage under the Policies is restricted to only "bodily injury" caused, in whole or in part, by Mr. Demolition.

173.     Discovery in the *Nemeth* Action established that Nemeth's injuries were not caused by Mr. Demolition.

174.     At the construction project where Nemeth was injured, Mr. Demolition only hauled away debris.

175.     Mr. Demolition did not direct or control any of the work at that project.

176.     Non-party, Prestige Construction was the General Contractor and directed and controlled the job site.

177.     Upon information and belief, Mr. Demolition had left the job site several months before Nemeth was injured.

178.     Thus, because Mr. Demolition did not cause Nemeth's injuries, 1241 is not insured under policies PGIARK05540-00 and PGIXS00329-00.

179.     Accordingly, Underwriters and HDI have no duty or obligation to defend or indemnify 1241 in the *Nemeth* Action.

## COUNT VII
## 1855 IS NOT AN ADDITIONAL INSURED

180.     Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

181.     1855 seeks coverage under coverage under policies PGIARK05540-00 and PGIXS00329-00 claiming to be an additional insured.

182.     As set forth above, 1855 does not qualify as an additional insured under those policies.

183.     Even if 1855 somehow qualified as an additional insured, additional insured coverage under the Policies is restricted to only "bodily injury" caused, in whole or in part, by Mr. Demolition.

184.     Discovery in the *Landacay* Action established that Landacay's injuries were not caused by Mr. Demolition.

185.     At the construction project where Landacay was injured, Mr. Demolition only hauled away debris.

186.     Mr. Demolition did not direct or control any of the work at that project.

187.     Non-party, Prestige Construction was the General Contractor and directed and controlled the job site.

188.     Mr. Demolition had left the job site several months before Landacay was injured.

189.     Thus, because Mr. Demolition did not cause Landacay's injuries, 1855 is not insured under policies PGIARK05540-00 and PGIXS00329-00.

190.     Accordingly, Underwriters and HDI have no duty or obligation to defend or indemnify 1855 in the *Landacay* Action.

## COUNT VIII
## CONTRACTUAL LIABILITY EXCLUSION

191.    Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

192.    In the *Landacay* Action, SILVERCUP filed a motion for summary judgment seeking contractual indemnification from 1855 for any judgment or award against arising out of Jose Landacay's injuries.

193.    Upon information and belief, 1855 will seek coverage from Underwriters for SILVERCUP's contractual indemnification claim.

194.    As set forth above, 1855 does not qualify as an insured.

195.    Even if 1855 somehow qualified as an additional insured, the Contractual Liability Exclusion applies to bar coverage SILVERCUP's contractual indemnity claim.

196.    None of the exceptions to the Contractual Liability Exclusion apply.

197.    Accordingly, Underwriters and HDI have no duty or obligation to defend or indemnify 1855 for SILVERCUP's, or anyone else's, contractual indemnity claim.


## COUNT IX
## INDEPENDENT CONTRACTOR EXCLUSION

198.    Underwriters repeats and incorporates the foregoing paragraphs as though fully set forth herein.

199.    Policies PGIARK05540-03 and PGIXS00329-03 contain an "Exclusion of Injury to Employees, Contractors and Employees of Contractors".

200.    That exclusion excludes coverage for "bodily injury" to a "'contractor' or any 'employee' of any 'contractor' arising out of or in the course of the rendering or performing of

services of any kind or nature whatsoever by such 'contractor' or any 'employee' of such 'contractor' for which any insured may become liable in any capacity."

201.     PACHECO alleges that, while working at a construction site located at 294 Grand Street, New York, New York, she fell off a scaffold and sustained injury.

202.     Thus, Pacheco was a "contractor" or "employee" of a "contractor" performing services at the project.

203.     Accordingly, the Exclusion of Injury to Employees, Contractors and Employees of Contractors applies to bar coverage for PACHECO's claim and any resulting lawsuit.

**WHEREFORE**, Underwriters and HDI respectfully request judgment:

(1)     Declaring that the policies Underwriters and HDI issued to Mr. Demolition, policy numbers PGIARK05540-00, PGIXS00329-00, PGIARK05540-01, PGIXS00329-01, PGIARK05540-02, PGIXS00329-02, PGIARK05540-03, and PGIXS00329-03 are void *ab initio* pursuant to New York Insurance Law § 3105;

(2)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, 1241 42 Development LLC, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Gabor Nemeth v. Prestige Construction NY LLC, 1241 42 Development LLC, Mr. Demolition Inc., and ABC Corp., a fictious name intending to be that of an unknown contractor*, Supreme Court, Kings County, Index No.: 519284/2017;

(3)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the claims and resulting third-party lawsuit styled *1241 42 Development LLC v. OHR Chodosh Electrical Contracting, Inc. and Mr. Demolition Inc.,* Supreme Court, Kings County, Index No.: 519284/2017;

(4)     Declaring that Underwriters and HDI may withdraw from the defense of 1241 42 Development LLC in the lawsuit captioned *Gabor Nemeth v. Prestige Construction NY LLC, 1241 42 Development LLC, Mr. Demolition Inc., and ABC Corp., a fictious name intending to be that of an unknown contractor*, Supreme Court, Kings County, Index No.: 519284/2017;

(5)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, 1855 EP Holdings LLC, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Jorge Velez, as Administrator of the Estate of Jose Landacay, Jorge Velez, as Guardian of K.L, a Minor, and Jessica Landacay v. Mr. Demolition, Inc., 1855 EP Holdings, LLC, Prestige Construction NY, LLC, Zenco Group, Inc., J&C Steel Fabricators, Corp., Powers Bridging & Scaffolding, Inc., Silvercup Scaffolding 1, LLC and Best Build NYC, Inc.*, Supreme Court, Kings County, Index No.: 515560/2017;

(6)     Declaring that Underwriters and HDI may withdraw from the defense of 1855 EP Holdings LLC in the lawsuit captioned *Jorge Velez, as Administrator of the Estate of Jose Landacay, Jorge Velez, as Guardian of K.L, a Minor, and Jessica Landacay v. Mr. Demolition, Inc., 1855 EP Holdings, LLC, Prestige Construction NY, LLC, Zenco Group, Inc., J&C Steel Fabricators, Corp., Powers Bridging & Scaffolding, Inc., Silvercup Scaffolding 1, LLC and Best Build NYC, Inc.*, Supreme Court, Kings County, Index No.: 515560/2017;

(7)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Filippo Sarubbi and Anna Velia Sarubbi v. Sam Weisner a/k/a Shlome Weiss, 60 Equities LLC, Mr. Demolition Inc., and Countrywide Builders*, Supreme Court, Kings County, Index No.: 506513/2017;

(8)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Clarence Cobo v. Mr. Demolition Inc., Newkirk Partners LLC and SteelFab NY, Inc.*, Supreme Court, Bronx County, Index No.: 26682/2018E;

(9)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Tomas V. Zapeta v. 5214 Ave Development LLC, Mr. Demolition Inc., and Silvercup Scaffolding 1, LLC*, Supreme Court, Kings County, Index No.: 516962/2017;

(10)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Wesco Insurance Company, as subrogee of R&C Management Co. and 297 Lenox Realty LLC v. JRS Realty Enterprises, LLC, Gemstar Contracting Corp., Mr. Demolition Inc., Structural Engineering & Detailing P.E., P.C., and Robert Siqeca, P.C.*, Supreme Court, Kings County, Index No.: 501724/2019;

(11)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Michael Barretto v. Newkirk Partners LLC, Mr. Demolition Inc., and Urban Millwork Inc., and Twin Group Associates Inc.*, Supreme Court, Kings County, Index No.: 518653/2019;

(12)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Taiesha Rivera v. Shaker Contracting Corp. and Mr. Demolition Inc.*, Supreme Court, Bronx County, Index No.: 27880/2018E;

(13)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Consuelo Ramirez v. Mactech Roofing & Restoration Corp., Velocity Framers, Inc., Wide Flange, Inc., Best Building NYC, Inc., KL Cooling & Heating LLC, Mr. Demolition Inc., CELA Concrete Inc., and Green Star Electrical Contracting, Inc.*, Supreme Court, Kings County, Index No.: 501264/2019;

(14)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim and resulting lawsuit styled *Alexander Rodriguez v. 681 Franklin Avenue Holdings, Inc., Prestige Construction NY, LLC, and Mr. Demolition Inc.*, Supreme Court, Kings County, Index No.: 504507/2019;

(15)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with the underlying claim made by Nolvia Pacheco and any resulting lawsuit;

(16)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition, or anyone else, in connection with or any other occurrence, claim, or suit under the policies Underwriters and HDI issued to Mr. Demolition, Inc.;

(17)     Declaring that Underwriters and HDI may withdraw from the defense of Mr. Demolition in the above-referenced lawsuits;

(18)     Declaring that Underwriters and HDI have no obligation to defend or indemnify Mr. Demolition for the above-referenced claims and lawsuits because he has wholly failed to cooperate;

(19)     Declaring that Underwriters and HDI may withdraw from the defense of Mr. Demolition for the above-referenced claims and lawsuits because he has wholly failed to cooperate;

(20)     Declaring that Mr. Demolition is required to reimburse Underwriters and HDI for any and all defense costs and indemnification expenses it incurs or may incur as a result of the claims made against him in the above-referenced actions;

(21)     Declaring that 1241 42 Development LLC does not qualify as an additional insured under policies PGIARK05540-00 and PGIXS00329-00;

(22)     Declaring that Underwriters and HDI have no obligation to defend or indemnify 1241 42 Development LLC in connection with the underlying claim and resulting lawsuit styled *Gabor Nemeth v. Prestige Construction NY LLC, 1241 42 Development LLC, Mr. Demolition Inc., and ABC Corp., a fictious name intending to be that of an unknown contractor*, Supreme Court, Kings County, Index No.: 519284/2017;

(23)     Declaring that Underwriters and HDI may withdraw from the defense of 1241 42 Development LLC in the lawsuit captioned *Gabor Nemeth v. Prestige Construction NY LLC, 1241 42 Development LLC, Mr. Demolition Inc., and ABC Corp., a fictious name intending to be that of an unknown contractor*, Supreme Court, Kings County, Index No.: 519284/2017;

(24)     Declaring that 1241 42 Development LLC is required to reimburse Underwriters and HDI for any and all defense costs and indemnification expenses it incurs or may incur as a result of the claims made against it in the above-referenced actions;

(25)     Declaring that 1855 EP Holdings LLC does not qualify as an additional insured under policies PGIARK05540-00 and PGIXS00329-00;

(26) Declaring that Underwriters and HDI have no obligation to defend or indemnify 1855 EP Holdings LLC in connection with the underlying claim and resulting lawsuit styled *Jorge Velez, as Administrator of the Estate of Jose Landacay, Jorge Velez, as Guardian of K.L, a Minor, and Jessica Landacay v. Mr. Demolition, Inc., 1855 EP Holdings, LLC, Prestige Construction NY, LLC, Zenco Group, Inc., J&C Steel Fabricators, Corp., Powers Bridging & Scaffolding, Inc., Silvercup Scaffolding 1, LLC and Best Build NYC, Inc.*, Supreme Court, Kings County, Index No.: 515560/2017;

(27) Declaring that Underwriters and HDI may withdraw from the defense of 1855 EP Holdings LLC in the lawsuit captioned *Jorge Velez, as Administrator of the Estate of Jose Landacay, Jorge Velez, as Guardian of K.L, a Minor, and Jessica Landacay v. Mr. Demolition, Inc., 1855 EP Holdings, LLC, Prestige Construction NY, LLC, Zenco Group, Inc., J&C Steel Fabricators, Corp., Powers Bridging & Scaffolding, Inc., Silvercup Scaffolding 1, LLC and Best Build NYC, Inc.*, Supreme Court, Kings County, Index No.: 515560/2017;

(28) Declaring that 1855 EP Holdings is required to reimburse Underwriters and HDI for any and all defense costs and indemnification expenses it incurs or may incur as a result of the claims made against it in the above-referenced actions;

(29) Declaring that the Contractual Liability Exclusion applies to bar coverage for the contractual indemnity claim made by Silvercup Scaffolding 1, LLC against 1855 EP Holdings LLC;

(30) Declaring that the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" applies to bar coverage for the claim made by Nolvia Pacheco and any resulting lawsuit;

(31) Declaring that, with respect to the claim by Mansoor Ali, Defendant, Mr. Demolition must reimburse Underwriters $11,447.00, plus interest since the date of payment; and

(32) Granting such other and further relief as may be just, equitable and proper, together with the costs and disbursements of this action.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all the issues in this action.

Dated:   April 23, 2020
     Buffalo, New York                         HURWITZ & FINE, P.C.

Dan D. Kohane, Esq.
John R. Ewell, Esq.
*Attorneys for Plaintiffs*
*Certain Underwriters at Lloyd's, London, and HDI Global Specialty SE (f/k/a International Insurance Company of Hannover SE*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900