UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
CERTAIN UNDERWRITERS AT LLOYD'S
LONDON, *et al.*,

                  Plaintiffs,

   -against-

MR. DEMOLITION, INC., *at al.*,

                  Defendants.

REPORT &
RECOMMENDATION
20-CV-1886 (PKC) (SMG)

-----------------------------------------------------------------
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiffs, Certain Underwriters at Lloyd's, London ("Underwriters"), and HDI Global Specialty SE f/k/a International Insurance Company of Hannover SE ("HDI") (together, "plaintiffs"), bring this action against defendants Mr. Demolition, Inc. ("Mr. Demolition"), 1241 42 Development LLC, Clarence Cobo, Tomas V. Zapeta, Gabor Nemeth, Michael Barretto, Consuelo Ramirez, Alexander Rodriguez, Nolvia Pacheco, and Martin Gewirtz (collectively, "defendants"), seeking rescission of a series of insurance policies issued by Underwriters to Mr. Demolition, as well as for declaratory judgment, pursuant to 28 U.S.C. § 2201, that plaintiffs have no obligation to defend or indemnify Mr. Demolition in connection with various underlying state court tort actions. Second Amended Complaint ("Compl."), Dkt. 24.

Upon plaintiffs' application and in light of Mr. Demolition's failure to appear in or otherwise defend this action, the Clerk of the Court noted Mr. Demolition's default on August 31, 2020. Certificate of Default, Dkt. 45. Mr. Demolition then moved on October 2, 2020, to vacate its default and be permitted to defend against plaintiffs' claims on their merits. Motion to Vacate ("Mot. to Vacate"), Dkt. 64. The Honorable Pamela K. Chen referred Mr. Demolition's

motion to me for report and recommendation. Order dated October 8, 2020. For the following reasons, I respectfully recommend that the Court grant Mr. Demolition's motion to vacate its default and allow it to present a defense on the merits.[1]

## BACKGROUND

### I.     FACTUAL BACKGROUND

According to plaintiffs, on or about July 28, 2015, Mr. Demolition, through its president Joel Perlstein, applied for insurance with Underwriters. Compl. ¶ 38. In its application, Mr. Demolition represented that it was a construction/project manager and that it uses written contracts with customers and subcontractors, that these contracts include hold harmless agreements in Mr. Demolition's favor, that Mr. Demolition obtains certificates of insurance from all of its subcontractors, and that Mr. Demolition arranges to be added as an additional insured on all of its subcontractors' liability policies. *Id*. ¶¶ 39-49. In reliance on these representations, Underwriters issued an insurance policy to Mr. Demolition for the period of October 31, 2015 to October 31, 2016, which was then renewed yearly until October 31, 2019 (the "policies"). *Id*. ¶¶ 52-62; Mr. Demolition's Memorandum of Law in Support of Motion to Vacate ("Mr. Demolition's Mem. of Law") at 3, Dkt. 64-8.

Plaintiffs claim that after the policies were issued, Underwriters and HDI were notified of various claims and lawsuits brought against Mr. Demolition. Compl. ¶¶ 68-86. Plaintiffs allege that their investigation of these claims and lawsuits revealed that Mr. Demolition's insurance application contained material misrepresentations of fact, and that these misrepresentations were

---

[1] The Court takes note of plaintiffs' request for oral argument, which apparently was made not so much for an opportunity to elucidate an argument made in their written submissions but instead so that plaintiffs' counsel could "gain further experience arguing motions in federal court." Pls.' 10/28/2020 Ltr., Dkt. 77. While under normal circumstances the Court would be pleased to grant this request, in light of the ongoing public health crisis caused by the COVID-19 pandemic, including the current Court closure, the Court proceeds to rule on the parties' papers.

made in furtherance of a scheme "in which Mr. Demolition would, by contract, assume all liability for injuries at construction sites so as to transfer all liability to his liability insurers in exchange for a hefty sum of money." *Id.* ¶¶ 87-88.  According to plaintiffs, the scheme involved Mr. Demolition obtaining permits for various construction projects from the New York City Department of Buildings ("DOB") as the General Contractor when in fact it was not performing work in connection with those projects, overseeing the actual general contractor and subcontractors that were doing the work, or taking steps to ensure that the project work sites were safe. *Id.* ¶¶ 89-96.  Plaintiffs contend Mr. Perlstein acknowledged this scheme in his deposition testimony in one of the underlying tort actions, where he admitted he was paid fees to be the General Contractor on various projects on paper only, and that in return for that fee he would transfer liability for injuries at the project construction sites from the project owner to his own liability insurance carriers. *Id.* ¶¶ 99-101.

Plaintiffs further contend that Mr. Demolition failed to cooperate with their attempts to investigate and defend the claims made against Mr. Demolition.  The policies required Mr. Demolition to cooperate with the investigation and defense of all claims and lawsuits for which it sought insurance coverage. *Id.* ¶ 64.  Plaintiffs contend, though, that despite their requests and instructions, Mr. Demolition failed to provide documents or to appear for deposition or examination under oath. *Id.* ¶¶ 111-121.

Based on what they assert are misrepresentations and omissions in Mr. Demolition's insurance application, as well as Mr. Demolition's failure to cooperate in the investigation and defense of past and pending claims, plaintiffs seek rescission of the policies and reimbursement of all defense costs incurred, reimbursement of settlement payments made in prior actions, and a

3

declaratory judgment that plaintiffs have no duty or obligation to defend or indemnify Mr. Demolition or any others in connection with the policies. *Id*. ¶¶ 122-170.

## II. PROCEDURAL HISTORY

On August 25, 2020, in light of Mr. Demolition's failure to appear in or otherwise defend this action, plaintiffs requested a Certificate of Default. Dkt. 40. Mr. Demolition's default was noted by the Clerk of the Court on August 31, 2020. Dkt. 45. By letter dated September 2, 2020, Mr. Demolition informed the Court that it had retained counsel and requested additional time to answer, which was granted by the Court with plaintiffs' consent. Dkt. 50; Order dated September 3, 2020. While plaintiffs agreed to accept service of Mr. Demolition's Answer, they did not agree to vacate Mr. Demolition's default. Mr. Demolition's Mem. of Law at 2. Accordingly, Mr. Demolition moved to vacate its default and be permitted to appear in this action. Mot. to Vacate. The Honorable Pamela K. Chen then referred plaintiffs' motion to me for report and recommendation. Order dated October 8, 2020.

## DISCUSSION

### I. MOTIONS TO VACATE DEFAULT

#### A. Legal Standard

The Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Because Rule 55(c) does not define the term 'good cause,'" the Second Circuit has enumerated three criteria for deciding whether to relieve a party from default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). District courts may also consider "[o]ther relevant equitable factors," including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of

4

default would bring about a harsh or unfair result." *Id.* Although whether to set aside a default is left to the sound discretion of a district court, the court must bear in mind the Second Circuit's "strong 'preference for resolving disputes on the merits.'" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). Accordingly, any doubts "should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

### B. Whether Mr. Demolition has Shown Good Cause to Vacate the Entry of Default

Having considered the criteria set forth in *Enron Oil*, I conclude that there is good cause to vacate the default of Mr. Demolition. I address each of those criteria below.

#### i. Whether Mr. Demolition's Defaults Was Willful

A default is willful if it results from "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal quotation marks and citation omitted). Although a finding of bad faith is not a "necessary predicate," willfulness requires "that [a] defendant defaulted deliberately." *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). For example, courts have found a default to be willful where "an attorney [or litigant] failed, . . . for flimsy reasons, to comply with scheduling orders; or failed, . . . for incredible reasons, to appear for a scheduled pretrial conference and unaccountably delayed more than 10 months before moving to vacate." *S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) (internal citations omitted). A defendant's prompt response to an entry of default, on the other hand, suggests that the default was not willful. *See Enron Oil Corp.*, 10 F.3d at 98; *see also Johnson v. New York Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) (defaults were not willful because, among other

5

reasons, the moving defendants sought to vacate the defaults "a mere two business days" after they were entered).

Here, Mr. Demolition asserts that its default was not willful. Mr. Demolition's Mem. of Law at 5. Joel Perlstein, President of Mr. Demolition, claims that he received a copy of the plaintiffs' Second Amended Complaint in July of 2020. *Id.* at 2. Mr. Perlstein states that upon receipt, he contacted several attorneys to secure representation, but was unsuccessful in those efforts until retaining John Carman, Esq. on September 2, 2020. *Id.* Mr. Perlstein states that while he was aware that there was a deadline required to file an Answer and appear in this action, he did not fully understand the ramifications of delay and that he acted as quickly as possible to find appropriate counsel that he could afford to pay. *Id.* at 5.

Plaintiffs argue that Mr. Perlstein's claim that he attempted to retain counsel but had difficulty in doing so is "specious at best" because Mr. Perlstein did not set forth the names of the lawyers with whom he met, how many of those lawyers there were, or the dates on which he met them. Plaintiffs' Memorandum of Law in Opposition to Motion to Vacate ("Pls.' Mem. of Law") at 3-4, Dkt. 73. The Court finds this argument unpersuasive; a party seeking representation has no obligation to provide his adversary with this sort of information.

Considering that "all doubts must be resolved in favor of trial on the merits," and the extremely short amount of time—two days—from when Mr. Demolition's default was entered and when counsel appeared on its behalf and sought a reasonable extension of time to answer, I find that Mr. Demolition's default was not willful. *See Enron Oil Corp.*, 10 F.3d at 98.

### ii. Whether Plaintiffs will be Prejudiced by Vacatur

The Second Circuit has held that "delay standing alone does not establish prejudice" sufficient to defeat a showing of good cause. *Enron Oil Corp.*, 10 F.3d at 98. "Rather, it must

6

be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks and citation omitted); *see also Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010).

Here, there is no indication that plaintiffs will be prejudiced if the default entered against Mr. Demolition is vacated. Mr. Demolition points out that this action is at a very early stage and discovery has not yet commenced. Mr. Demolition's Mem. of Law. at 5. Additionally, Mr. Demolition states that "[n]o further delay is anticipated, as Mr. Demolition is now represented by counsel, has served its Answer, and is ready to appear in all discovery proceedings." *Id*. at 6. Finally, plaintiffs have failed to demonstrate that the delay caused by Mr. Demolition's default has resulted in the loss of evidence or will create difficulties in taking discovery. Pls.' Mem. of Law at 24-25. As such, I find that vacating Mr. Demolition's default will not cause plaintiffs undue prejudice.

### iii. Whether Mr. Demolition has Presented a Meritorious Defense

Plaintiffs' primary argument in opposition to defendant's motion is that Mr. Demolition has not presented a meritorious defense. Indeed, plaintiffs argue that, to the contrary, defendant's principal, when deposed in other litigation, admitted facts that support plaintiffs' claims in this case. While plaintiffs present a detailed argument that may eventually prevail, I conclude that setting aside Mr. Demolition's default is warranted in light of the "strong 'preference for resolving disputes on the merits.'" *Green*, 420 F.3d at 104.

To establish a meritorious defense, a defendant need not prove the defense conclusively. *See McNulty*, 137 F.3d at 740; *Davis*, 713 F.2d at 916. Rather, the defendant need only present some evidence of facts that, "if proven at trial, would constitute a complete defense." *Enron Oil*

7

*Corp.*, 10 F.3d at 98. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

Plaintiffs first argue that Mr. Demolition's insurance policy should be held void *ab initio* due to the material misrepresentations they claim were made in Mr. Demolition's initial application. Pls.' Mem. of Law at 4. Plaintiffs claim that, contrary to the representations Mr. Demolition made in its application for coverage, the contracts Mr. Demolition entered into with its customers and subcontractors did not include hold harmless provisions but only indemnification and insurance procurement provisions, did not specify any particular construction work to be performed, did not require certificates of insurance from subcontractors, did not require subcontractors to add Mr. Demolition as an additional insured on their policies, and finally, that Mr. Demolition did not have appropriate risk and liability controls in place. *Id*. at 5-6. Plaintiffs claim that these contracts were entered into in furtherance of a scheme in which Mr. Demolition was in essence selling its insurance coverage to others, and that Mr. Demolition's principal, Mr. Perlstein, acknowledged this scheme in testimony he gave at a deposition in another action that took place in November of 2018. *Id*. at 7-13. Plaintiffs state that, upon discovery of this arrangement, they never accepted further premiums from Mr. Demolition and stopped renewing its insurance policies. *Id*. at 16. In short, plaintiffs contend that Mr. Demolition represented itself in its 2015 insurance application as a legitimate general contractor when in fact it was not. *Id*. at 13.

Mr. Demolition responds to these allegations by asserting that when Mr. Perlstein secured the policies on behalf of Mr. Demolition, he answered all questions completely and accurately,

8

and points out that plaintiffs accepted premiums from the company and renewed its policies over a period of five years.  Mr. Demolition's Mem. of Law. at 3.  Mr. Demolition argues that, whatever may have occurred subsequently, the statements made in the application were true at the time they were made, and Mr. Perlstein has submitted an affidavit to that effect.  Affidavit of Joel Perlstein ("Perlstein Aff.") ¶ 3, Dkt. 64-7.

Plaintiffs point out that Mr. Demolition submitted its insurance application on July 28, 2015, and the action in which Mr. Perlstein gave the deposition testimony to which plaintiffs point as proof of the alleged scheme involves a construction contracted entered into only four months later, on November 25, 2015.  Pls.' Mem. of Law at 4, 7.  Plaintiffs further note that in this deposition Mr. Perlstein acknowledged that there were "about five other [prior] projects with. . . this arrangement."  *Id*. at 10, 12.  The precise dates of these earlier projects are not stated in plaintiffs' opposition memorandum.  Because plaintiffs contend that Mr. Demolition's application for insurance was fraudulent when made but put forth as evidence a contract entered into four months after the application was submitted, and because defendant's principal has submitted an affidavit asserting that the application was true and accurate when made, questions of fact are raised.  Particularly at this stage of the case, where no discovery has taken place, and in light of the preference for dispositions on the merits, plaintiffs' showing is insufficient to preclude defendants from appearing and answering the complaint.

Plaintiffs contend in the alternative that Mr. Demolition lacks a meritorious defense because it has failed to cooperate with plaintiffs' attempts to investigate and defend various claims made against Mr. Demolition.  Pls.' Mem. of Law at 17.  Plaintiffs assert that they have asked Mr. Perlstein for documents and to appear for an examination under oath, but that Perlstein has failed to comply.  *Id*. at 18-23.

9

Again, defendant denies plaintiffs' allegations and raises questions of fact. Mr. Demolition argues that it did cooperate in the defense of the underlying actions, as evidenced by Mr. Pearlstein's appearance at depositions in 2018 and 2020, as well as its production of certain responsive documents. Mr. Demolition's Mem. of Law. at 8; Mr. Demolition's Reply at 9. Additionally, Mr. Perlstein states in his affidavit that he has had "ongoing and extensive dealings" with the attorney designated by plaintiffs to defend Mr. Demolition and that, if anyone represented that he would not appear at an examination under oath, as plaintiffs claim, they did so without his authorization. Perlstein Aff. ¶¶ 8-10.

Finally, the Court notes that plaintiffs have provided 52 exhibits to their response to Mr. Demolition's motion to vacate and that these exhibits total more than 1,500 pages, suggesting that the facts underlying plaintiffs' claims have at least some degree of complexity. Mr. Demolition has yet to have any opportunity to conduct discovery but is confronting what is essentially an evidence-based motion for summary judgment. Under these circumstances, denying Mr. Demolition's motion to vacate would "bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96. Thus, and bearing in mind that "defaults are generally disfavored and rare reserved for rare occasions," *id.*, I respectfully recommend that the Court grant Mr. Demolition's motion to vacate its default.

## CONCLUSION

For the reasons stated above, I respectfully recommend that Mr. Demolition's motion to vacate its default be granted. Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than January 11, 2021. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health*

*& Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit). Plaintiff is hereby directed to serve copies of this Report and Recommendation upon Rutland Realty and EPP at their last known addresses, and to file proof of service with the Court.

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
December 28, 2020

U:\#JH 2020-2021\Certain Underwriters at Lloyd's London v. Mr. Demolition Inc, 20-cv-1886, R&R Vacate Default\Certain Underwriters at Lloyd's London, et al. v. Mr. Demolition Inc, et al. 20-cv-1886, R&R Vacate Default FINAL.docx